# EXHIBIT 1



| | 2022V-0107 | **JERMAINE BRADLEY VS MATHEW WRIGHT ET AL** | FAYETTE SUPERIOR | CONTRACT/ACCOUNT |

# Case Docket

**Case Initiation Date**
02/09/2022

**Assigned Judge**
RHONDA B KREUZIGER

Why subscribe to PeachCourt+? Because this is one of your cases, you probably want to know when anyone eFiles anything in this case. As a PeachCourt+ subscriber, you will receive an email alert even when someone files on paper: judge's order, sheriff's return of service, self-represented litigant filing... you get the idea.

## Party Information

Plaintiff:

**BRADLEY, JERMAINE**

Defendants:

**BIBLE, DARYL N**

**TRUIST BANK,**

**WRIGHT, MATHEW**

**FIRST COMMUNITY MORTGAGE INC,**

## Attorney/Filer Information

**LOCKETT, JOHN**

| Docket # | Document Type | Description | Filer | Filing Date | Source |
|---|---|---|---|---|---|
| 1 | Notice | NOTICE OF FILING EXHIBITS | | 02/09/2022 | Manual |
| 2 | Miscellaneous | CASE INITIATION FORM FILED | | 02/09/2022 | Manual |
| 3 | Complaint | BILL OF COMPLAINT | | 02/09/2022 | Manual |
| 4 | Summons | SUMMONS | | 02/09/2022 | Manual |
| 5 | Entry Of Appearance | EFILED NOTICE OF APPEARANCE OF JOHN A LOCKETT III | Lockett, John | 02/17/2022 | EFile: PeachCourt |

The clerk's office maintains the official record for this case. The information we provide is our best attempt at reflecting the official record. Despite our best efforts, you may find discrepancies between the information on this page and the clerk's official record. The clerk's official record is always official and is always THE record.

Printed from www.peachcourt.com on Feb 23, 2022 3:41 PM

| | |
|---|---|
| **FAYETTE COUNTY SUPERIOR COURT**<br>One Center Drive, Fayetteville, Georgia 30214 | FILED IN OFFICE FAYETTE CNTY GA<br>2022 FEB 9 PM 1:06 |
| Plaintiff: Jermaine Bradley<br>      150 Campbellton St<br>      Fairburn, Georgia 30213<br><br>v.<br><br>Defendant: Mathew Wright- CFO of<br>      FIRST COMMUNITY MORTGAGE, INC<br>      275 Robert Rose Drive<br>      Murfreesboro, Tennessee 37129<br><br>Defendant:  Daryl N. Bible, CFO of<br>      TRUIST BANK<br>      214 North Tryon Street,<br>      Charlotte, North Carolina 28202 | COURT USE ONLY<br><br>Case Number: 2022V-0107<br>KBR<br><br>SHEILA STODDARD, CLERK |
| **NOTICE OF FILING EXHIBITS** | |

By: *Jermaine Bradley*
    Jermaine Bradley

| | |
|---|---|
| **FAYETTE COUNTY SUPERIOR COURT**<br>One Center Drive, Fayetteville, Georgia 30214 | |
| Plaintiff: Jermaine Bradley<br>       150 Campbellton St<br>       Fairburn, Georgia 30213 | |
| v. | COURT USE ONLY |
| Defendant: Mathew Wright- CFO of<br>        FIRST COMMUNITY MORTGAGE, INC<br>        275 Robert Rose Drive<br>        Murfreesboro, Tennessee 37129 | Case Number: |
| Defendant:  Daryl N. Bible, CFO of<br>        TRUIST BANK<br>        214 North Tryon Street,<br>        Charlotte, North Carolina 28202 | |
| **EXHIBIT A: NOTE/ FINANCIAL ASSET** | |

By: *Jermaine Bradley*
Jermaine Bradley

BB&T MORTGAGE CORRESPONDENT LENDING DOCUMENT CHECKLIST
## CorrAdvantage

Correspondent: _____ FIRST COMMUNITY MORTGAGE, INC.

Contact Person, phone #, e-mail address, and fax # for:

Pend Notices:   arista.bagwell@fcmpartners.com

Purchase Advices   Kristie.Shirley.@ fcm partner.com

Borrower Name Jermaine Bradley_____ Loan Number 6495680015

Please mark front of file CorrAdvantage and ship to:   BB&T Correspondent Lending
Attn: CorrAdvantage Team
2713 Forest Hills Road
Wilson, NC 27893

1. Note, Modification Agreement and Addendums if applicable
2. Copy of Security Instrument and applicable Riders - with legal description and Trustee disclosed if applicable (after recording you can email the first 3 pages, legal description, and signature page of Mortgage to CorrAdvantage@BBandT.com)
3. Copy of the assignment if not closed on MERS MOM Docs (email copy of recorded assignment when received to CorrAdvantage@BBandT.com).
4. Life of Loan Flood Certification (if not FAFDS – we will order and charge $10.00)
5. Tax Information Sheet
6. Homeowner's policy(including wind and hail coverage) with correct mortgagee clause and paid receipt
7. Proof of HO6 coverage for condos (coverage must be at least 20% of appraised value)
8. Hud-1 Settlement Statement
9. Final Truth-in-Lending
10. Appraisal (pages 1, 2 &3)
11. Final Application (for HMDA purposes)
12. Name Affidavit
13. Completed IRS Form 4506-T to include all borrowers
14. Most recent Official IRS Tax Transcript for each borrower
15. HPML Certification (Higher Priced Mortgage Loan)
16. Copy of the LP/DU AUS Response
17. Underwriting Transmittal Summary (Form 1008)
18. Wiring Instructions

## OTHER DOCUMENTS REQUIRED AS APPLICABLE

19. Buydown Agreement
20. Power of Attorney
21. Trust Agreement
22. Flood Policy with correct mortgagee clause and paid receipt
23. MI Certificate and proof of payment if single premium or Lender Paid
24. Initial Escrow Disclosure (if loan is escrowed)
25. Subordination Agreement if loan has subordinate financing

For questions please contact:
Dionne Taylor - 252-296-0247 (800-748-7003) DionneTaylor@bbandt.com
Julie Wood - 252-296-0274 (800-748-7003) julie.wood@bbandt.com          12/14/2010

Multistate

Loan No.: **119277**

# NOTE

MIN 1003081-0000119277-7
**MERS TELEPHONE: (888) 679-6377**

| FHA Case No. |
|---|
| 105-6825409-703 |

**January 30, 2012**
[Date]

**230 Camelot Dr., Fayetteville, GEORGIA  30214**
[Property Address]

1.   **PARTIES**
     "Borrower" means each person signing at the end of this Note, and the person's successors and assigns.  "Lender" means
**First Community Mortgage, Inc.**
and its successors and assigns.

2.   **BORROWER'S PROMISE TO PAY; INTEREST**
     In return for a loan received from Lender, Borrower promises to pay the principal sum of **Two Hundred Fifty Three Thousand Four Hundred Nine And 00/100** Dollars (U.S. **$253,409.00**), plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Three and Seven-Eighths** percent (**3.875%**) per year until the full amount of principal has been paid.

3.   **PROMISE TO PAY SECURED**
     Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument."  The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4.   **MANNER OF PAYMENT**
     (A)    **Time**
     Borrower shall make a payment of principal and interest to Lender on the **FIRST** day of each month beginning on **March 1, 2012**.  Any principal and interest remaining on the 1st day of **February, 2042**, will be due on that date, which is called the "Maturity Date."
     (B)    **Place**
     Payment shall be made at **275 Robert Rose Drive, Murfreesboro, TENNESSEE  37129** or at such place as Lender may designate in writing by notice to Borrower.
     (C)    **Amount**
     Each monthly payment of principal and interest will be in the amount of U.S. **$1,191.62**.  This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.
     (D)    **Allonge to this Note for payment adjustments**
     If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]

     [ ]  Graduated Payment Allonge        [ ]  Growing Equity Allonge        [ ]  Other [specify]

5.   **BORROWER'S RIGHT TO PREPAY**
     Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

---

FHA Multistate Fixed Rate Note

Page 1 of 3

10/95
IR (0809)
Initials: J W B

usfnote

[blacked out / redacted region]

**6.     BORROWER'S FAILURE TO PAY**

**(A)     Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen (15) calendar days after the payment is due, Lender may collect a late charge in the amount of Four percent (4.00%) of the overdue amount of each payment.

**(B)     Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)     Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.     WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.     GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Jermaine W Bradley_ _____ (Seal)
Jermaine W. Bradley                        -Borrower

Pay to the order of:
Branch Banking and Trust Company
Without Recourse
First Community Mortgage, Inc.

By: _____

Name and Title: _____ **LaRhonda Potts** _____

Post Closing/Shipping Manager

| | |
|---|---|
| **FAYETTE COUNTY SUPERIOR COURT**<br>One Center Drive, Fayetteville, Georgia 30214 | |
| Plaintiff: Jermaine Bradley<br>    150 Campbellton St<br>    Fairburn, Georgia 30213 | |
| v. | COURT USE ONLY |
| Defendant: Mathew Wright- CFO of<br>    FIRST COMMUNITY MORTGAGE, INC<br>    275 Robert Rose Drive<br>    Murfreesboro, Tennessee 37129 | Case Number: |
| Defendant:  Daryl N. Bible, CFO of<br>    TRUIST BANK<br>    214 North Tryon Street,<br>    Charlotte, North Carolina 28202 | |
| **EXHIBIT B: SECURITY DEED** | |

By: _____
    Jermaine Bradley



Doc ID: 008757590013 Type: SD
Recorded: 02/03/2012 at 08:35:00 AM
Fee Amt: $794.50 Page 1 of 13
Intangible Tax: $760.50
Fayette, Ga. Clerk Superior Court
Sheila Studdard Clerk of Court
BK **3851** PG **357-369**

RETURN TO:

McCurdy & Candler, LLC
Six Piedmont Center, Suite 700
3525 Piedmont Road, NE
Atlanta, GA 30305

Return To:
**First Community Mortgage, Inc**
**275 Robert Rose Drive**
**Murfreesboro, TENNESSEE 37129**
Attn.: **SHIPPING DEPT./DOC. CONTROL** ②
Prepared by:
**First Community Mortgage, Inc.**

---

[Space Above This Line For Recording Data]

State of Georgia

# SECURITY DEED

FHA Case No.
**105-6825409-703**

MIN **1003081-0000119277-7**
**MERS TELEPHONE: (888) 679-6377**

THIS SECURITY DEED ("Security Instrument") is given on **January 30, 2012**. The Grantor is **Jermaine W. Bradley, a married person** and whose address is **150 East Campbelton St., Fairburn, GEORGIA 30213** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc., ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as grantee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. **(888) 679-**MERS. **First Community Mortgage, Inc.,** ("Lender") is organized and existing under the laws of **Tennessee**, and has an address of **275 Robert Rose Drive, Murfreesboro, TENNESSEE 37129.** Borrower owes Lender the principal sum of **Two Hundred Fifty Three Thousand Four Hundred Nine And 00/100** Dollars (U.S. **$253,409.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **February 1, 2042**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 1 of 9

Initials: JWB

gafmertd

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to MERS, (solely as nominee for Lender and Lender's successors and assigns), and the successors and assigns of MERS, with power of sale, the following described property located in **FAYETTE** County, Georgia:

**SEE EXHIBIT "A" ATTACHED HERETO AND BY THIS REFERENCE MADE A PART HEREOF.**

See Attached Exhibit "A"

which has the address of **230 Camelot Dr.** [Street] **Fayetteville** [City], Georgia **30214** [Zip Code] ("Property Address");

TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the

**FHA Georgia Security Deed with MERS - 4/96**
**Amended 02/01**

Initials: $\mathcal{S W B}$

Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for Items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application

**FHA Georgia Security Deed with MERS - 4/96**
**Amended 02/01**

Page 3 of 9

Initials: $\underline{JW\beta}$

of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

**FHA Georgia Security Deed with MERS - 4/96**
**Amended 02/01**

Page 4 of 9

Initials: $\underline{SWR}$

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Initials: SWB

applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 6 of 9

Initials: $SWB$

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full of all sums under paragraph 9, Lender may invoke the power of sale granted by Borrower and any other remedies permitted by applicable law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Initials: $\underline{SWB}$

Lender's deed shall be prima facie evidence of the truth of the statements made therein.  Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order:  (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale.  If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act.  Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

19.  **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower.  Borrower shall pay any recordation costs.

20.  **Waiver of Homestead.**  Borrower waives all rights of homestead exemption in the Property.

21.  **Assumption not a Novation.**  Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

22.  **Security Deed.**  This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

23.  **Riders to this Security Instrument.**  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

| | | |
|---|---|---|
| [ ]  Condominium Rider | [ ]  Growing Equity Rider | [X]  Other(s) [specify] |
| [ ]  Planned Unit Development Rider | [ ]  Graduated Payment Rider | WAIVER   OF   BORROWER'S RIGHTS RIDER |

WAIVER OF BORROWERS RIGHTS/
CLOSING ATTORNEY AFFIDAVIT

FHA Georgia Security Deed with MERS - 4/96
Amended 02/01

Page 8 of 9

Initials: ꓕꓪ ꓐ

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument

_____ X _____ (Seal)
                              Jermaine W. Bradley            -Borrower

STATE OF GEORGIA, _____ Fulton _____ County ss:
Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____ Fulton _____ County

FHA Georgia Security Deed with MERS – 4/96
Amended 02/01

Page 9 of 9

Exhibit "A"

All that tract or parcel of land lying and being in Land Lot 191 of the 5th District, Fayette County, Georgia, being Lot 9, Beverly Manor Subdivision, 14 Section as per plat recorded in Plat Book 17, Page 13, Fayette County, Georgia Records, which recorded plat is incorporated herein by this reference and made a part of this description. Said property being known as 230 Camelot Drive accorded to the present system of numbering houses in Fayette County, Georgia.

SWB



## WAIVER OF BORROWER'S RIGHTS RIDER

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

X _Jermaine W Bradley_ (Seal)
Jermaine W. Bradley    -Grantor

_____
Unofficial Witness

_____
Notary Public

1030(GA) (9410).02
gawairid

10/94

GEORGIA -

GRANTOR:                    **Jermaine W. Bradley**

LENDER:                     **First Community Mortgage, Inc.**

DATE OF SECURITY DEED:      **January 30, 2012**

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY:    (1) ACKNOWLEDGES THE **RIGHT TO ACCELERATE** THE DEBT AND THE **POWER OF ATTORNEY** GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) **WAIVES** ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____                    _____ (Seal)
Unofficial Witness                            Jermaine W. Bradley

_____
Notary Public

Waiver of Borrower's Rights-GA
960(GA) (1101)
gawaivaf

Page 1 of 2

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the _____

_____

_____ Closing Attorney
Notary Public

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_Jermaine W. Bradley_        1/30/12
Borrower Jermaine W. Bradley        Date

## General Civil and Domestic Relations Case Filing Information Form

☑ Superior or ☐ State Court of _Fayette_ County

| For Clerk Use Only | |
|---|---|
| Date Filed _____<br>**MM-DD-YYYY** | Case Number _2022V-0107_ |

**Plaintiff(s)**

_Bradley        Jermaine_

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

**Defendant(s)**

_Wright        Mathew_

_First  Comm. Mort. Inc_

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

_Bible,  Daryl N._

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

_Truist  Bank_

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|

Plaintiff's Attorney _____ State Bar Number _____ Self-Represented ☑

### Check one case type and one sub-type in the same box (if a sub-type applies):

**General Civil Cases**

- ☐ **Automobile Tort**
- ☐ **Civil Appeal**
- ☐ **Contempt/Modification/Other Post-Judgment**
- ☑ **Contract**
- ☐ **Garnishment**
- ☐ **General Tort**
- ☐ **Habeas Corpus**
- ☐ **Injunction/Mandamus/Other Writ**
- ☐ **Landlord/Tenant**
- ☐ **Medical Malpractice Tort**
- ☐ **Product Liability Tort**
- ☐ **Real Property**
- ☐ **Restraining Petition**
- ☐ **Other General Civil**

**Domestic Relations Cases**

- ☐ **Adoption**
- ☐ **Contempt**
  - ☐ **Non-payment of child support, medical support, or alimony**
- ☐ **Dissolution/Divorce/Separate Maintenance/Alimony**
- ☐ **Family Violence Petition**
- ☐ **Modification**
  - ☐ **Custody/Parenting Time/Visitation**
- ☐ **Paternity/Legitimation**
- ☐ **Support – IV-D**
- ☐ **Support – Private (non-IV-D)**
- ☐ **Other Domestic Relations**

SHEILA STUDDARD, CLERK
FILED IN OFFICE FAYETTE CNTY GA
2022 FEB 14 1:18

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____ _____
**Case Number**                    **Case Number**

☐ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____ **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

Version 1.1.20

FILED IN OFFICE FAYETTE CNTY GA
2022 FEB 9 PM1:05

SHEILA STUDDARD, CLERK

| **FAYETTE COUNTY SUPERIOR COURT**<br>One Center Drive, Fayetteville, Georgia 30214 | |
|---|---|
| Plaintiff: Jermaine Bradley<br>    150 Campbellton St<br>    Fairburn, Georgia 30213 | |
| v. | COURT USE ONLY |
| Defendant: Mathew Wright- CFO of<br>    FIRST COMMUNITY MORTGAGE, INC<br>    275 Robert Rose Drive<br>    Murfreesboro, Tennessee 37129 | 2022V-0107<br>Case Number:  KB1P |
| Defendant: Daryl N. Bible, CFO of<br>    TRUIST BANK<br>    214 North Tryon Street,<br>    Charlotte, North Carolina 28202 | |
| **BILL OF COMPLAINT** | |

The plaintiff respectfully shows to the Court:

I.

That he and the defendants have a beneficiary and trustee relationship—the beneficiary being the complainant and the trustees being the defendants. On or about the Thirtieth day of January 2012, the plaintiff and the defendants entered into a contract for the purchase of Real Property located at 230 Camelot Dr. Fayetteville, Georgia 30214 by use of a financial asset disguised as a NOTE, see Exhibit A, loan number 119277, secured by a Security Deed, see Exhibit B. Defendant BB&T has since then merged with SunTrust Bank and is herein referred to as TRUIST BANK. Defendants FIRST COMMUNITY MORTGAGE, INC. and TRUIST BANK collectively have custody, control and management of complainant's financial asset. Defendants FIRST COMMUNITY MORTGAGE, INC. and TRUIST BANK is the appropriate parties to said choses in action as the contract was indorsed and negotiated by said Corporations. Mathew Wright and Daryl N. Bible is being made party defendants on behalf of the said Corporate entities as they are held at a more higher standards than others, and have Confidential Commercial Information that other agents in said Corporate structure are forbidden to bring forth as evidence.

II.

Plaintiff indorsed said financial asset, as the originator of the first funds transfer thus giving it value and consideration and entrusted it to defendant FIRST COMMUNITY MORTGAGE who's agent then altered the terms and conditions of the financial asset by use of a restrictive indorsement on the original financial asset bearing wet ink signatures, which were sold to TRUIST BANK as an investment contract, rendering the NOTE no longer a liability Instrument but a financial asset. The restrictive indorsement altered the NOTE into a financial asset, and said restrictive indorsement discharged the maker from any further financial contractual obligations. The defendants have engaged in a pooling and servicing agreement between one another which has failed to be memorialized or subscribed to by complainant.

III.

Plaintiff positively avers that FIRST COMMUNITY MORTGAGE and TRUIST BANK has acted in bad faith with unclean hands, which has induced complainant to indorse an unconscionable contract. Plaintiff avers that there is no negligence, or other fault on plaintiff's part and that plaintiff's rights, titles, and interests are being infringed upon by the defendants.

### IV.

### CHARGES

The premises considered, complainant charges defendant with the following:

1st. Plaintiff charges defendants with negligent misrepresentation due to the fact that the Note was treated as cash equivalent, and sold at discount as an investment contract.

2nd. Plaintiff charges defendants with contributory negligence due to both defendants contributing to complainant's loss.

3rd. Plaintiff charges defendants with negligent misrepresentation and gross negligence due to fraud being perpetuated against plaintiff through fraudulent conveyance of language in said security deed and Note.

4th. Plaintiff charges defendants with filing false documents as defendants has sold the Note with out recording it with the security deed, as the security deed and Note is inseperable.

5th. Plaintiff charges defendants with unjust enrichment due to their wrongful registration of transfer of the Note.

6th Plaintiff charges defendants jointly and severally with financial fraud for the unlawful conversion of the ownership of property.

### V.

### PRAYER FOR SUBPOENA AND PUBLICATION

The premises considered, plaintiff prays:

1st. That subpoena to answer issue and that publication be made as to the non-resident defendant, requiring them to appear and answer this bill, but their answer on oath is waived.

### VI.

### PRAYER FOR SPECIAL AND GENERAL RELIEF

3rd. That plaintiff be given absolute title to property located at 230 Camelot Dr. Fayetteville, Georgia 30214, free and clear unencumbered without any attachments.

4th. That plaintiff be granted special relief through receiving the proceeds from said investment contract from defendants.

5th. That defendants be taxed with all costs of this cause and that plaintiff may have such further and other relief as he may be entitled to.

### VII.

### PRAYER FOR DAMAGES

6th. That plaintiff recover of the defendants the special and general damages he has suffered by reason of gross negligence, gross misrepresentation, and contributory negligence.

7th. That plaintiff recover the damages he has sustained by reason of loss, mental anguish, emotional distress and financial fraud due to said breaches of fiduciary duties of the defendants.

8th. That plaintiff recover from defendant all the costs of this cause.

### VIII.
### PRAYER FOR AN ACCOUNT

9th. That the defendant, Mathew Wright- CFO of FIRST COMMUNITY MORTGAGE INC, and Daryl N. Bible, CFO of TRUIST BANK set forth in their answers, a full, true and particular account of all moneys by them and their agents, or servants, received, collected, or in any way obtained from the assignment or transfer of said contract; and that defendants bring forth the Currency Transaction Reports, FinCEN forms 105, 112, 8300, 1041 Fiduciary Tax Return, 1099 OID, 1099A, 1099C, 1066 REMIC Tax Return, FR 2046 Balance sheet mandatory filings pursuant to Title 12 U.S.C. 248 and 347, 8-K current report, 10-K annual report, Pooling and Servicing Agreement, form S-1 and S-3 Registration statements, Schedule RC-B Securities, Schedule RC-C Loans and Lease Financing Receivable, and Schedule RC-L Off-Balance Sheet Items for proof that the financial asset that complainant indorsed was treated as an investment contract; and that the Master be ordered to take and state an account of all the transactions occurring from the initial dealing between the plaintiff and defendants through the assignment of said contract, so as to show the full and true amount due plaintiff, by reason of the premises. Plaintiff prays that the Court to appoint a receiver.
This is the first application for a receiver in this cause.

### IX.
### PRAYER FOR DISCOVERY

10th. That the defendants be required on their several and respective oaths to make full, true, direct and perfect answer to all and singular matters aforesaid, according to the best of their knowledge, remembrance, information and belief: and that they specifically answer, the following:

### X.
### INTERROGATORIES

(1) Did Defendant's file a 1041 Fiduciary Income Tax Return evidencing that defendants gave complainant a loan?
(2) Did FIRST COMMUNITY MORTGAGE INC indorse the Note "Pay to the Order of" TRUIST BANK "WITHOUT RECOURSE"?
(3) Did Defendants FIRST COMMUNITY MORTGAGE INC and TRUIST BANK take the Note subject to all of complainant's claims and defenses?
(4) Does Complainant Jermaine Bradley have an adverse claim to the Note?
(5) Is TRUIST BANK the transferee?
(6) Did either defendant take the election to qualify as a REIT and pays 90% of interest and dividends to its investors?
(7) Is either of the defendants the originator of the first funds transfer?
(8) Did PARAMOUNT RESIDENTIAL MORTGAGE GROUP INC pay the taxes on the transfer of the Note?
(9) Is either of the defendants a qualified mortgage?

(10) Does either of the defendants retain any legal or equitable interest in the NOTE sold?

I, Jermaine Bradley, takes oath that the statements in the foregoing bill, made as of his own knowledge are true, and those made on information and belief to be true.. Executed on the _____ 9 of February 2022.

By: Jermaine Bradley
Jermaine Bradley, Complainant

Sworn and subscribed before me on
the 9 day of February 2022.

Shirley C Copeland
NOTARY PUBLIC
Fayette County, GEORGIA
My Commission Expires 04/18/2025

Notary

CERTIFICATE OF SERVICE

I, Jermaine Bradley, certify that the foregoing BILL OF COMPLAINT was hand delivered to the Clerk of Fayette County Superior Court, One Center Drive, Fayetteville, Georgia 30214 this 9 day of February 2022.

By: Jermaine Bradley
Jermaine Bradley

| **FAYETTE COUNTY SUPERIOR COURT**<br>One Center Drive, Fayetteville, Georgia 30214 | |
|---|---|
| Plaintiff: Jermaine Bradley<br>150 Campbellton St<br>Fairburn, Georgia 30213 | |
| V. | COURT USE ONLY |
| Defendant: Mathew Wright- CFO of<br>FIRST COMMUNITY MORTGAGE, INC<br>275 Robert Rose Drive<br>Murfreesboro, Tennessee 37129 | Case Number: |
| Defendant: Daryl N. Bible, CFO of<br>TRUIST BANK<br>214 North Tryon Street,<br>Charlotte, North Carolina 28202 | |
| **PROSECUTION BOND** | |

I, Jermaine Bradley, hereby acknowledge myself security for all costs adjudged
against the complainant in the foregoing bill. Executed on the ___9___ of February 2022.

By: _Jermaine Bradley_
    Jermaine Bradley

SUMMONS                          SC-85-1                          Clyde Castleberry Co., Covington, GA 30015

# IN THE SUPERIOR/~~STATE~~ COURT OF _Fayette_ _____ COUNTY
## STATE OF GEORGIA

_Jermaine Bradley_

CIVIL ACTION
NUMBER _2022V-0107_

_____

_____  **PLAINTIFF**

VS.

_Mathew Wright_
_et, al._

_____  **DEFENDANT**

FILED IN OFFICE FAYETTE CNTY GA
2022 FEB 9 PM 1:18

SHEILA STUDDARD, CLERK

## SUMMONS

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned and required to file with the Clerk of said court and serve upon the Plaintiff's attorney, whose name and address is: _Jermaine Bradley_
_150 Campbellton St_
_Fairburn Ga 30213_

an answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This _9th_ day of _February_, 20 _22_.

Clerk of Superior/~~State~~ Court

BY _Sheila Studdard /BD_
~~Deputy~~ Clerk

INSTRUCTIONS: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

☒ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
FAYETTE COUNTY, GEORGIA

**2022V-0107**

**RHONDA B KREUZIGER**
**FEB 17, 2022 03:27 PM**

Sheila Studdard, Clerk
Fayette County, Georgia

## IN THE SUPERIOR COURT OF FAYETTE COUNTY
## STATE OF GEORGIA

JERMAINE BRADLEY,            )
                                      )
       Plaintiff,             )       CIVIL ACTION NO. 2022V-0107
                                        )
v.                                   )
                                      )
MATTHEW WRIGHT, CFO of FIRST     )
COMMUNITY BANK, DARYL N.       )
BIBLE, CFO OF TRUIST BANK,       )
                                      )
       Defendants.        )
                                      )

## <u>NOTICE OF APPEARANCE OF JOHN A. LOCKETT III</u>

COMES NOW JOHN A. LOCKETT III, duly admitted to practice in this Court, and

pursuant to Uniform Superior Court Rule 4.2, files his notice of appearance as counsel on behalf

of Defendant Matthew Wright.

                                             **THE LOCKETT LAW FIRM**

                                             */s/John A. Lockett*
                                             John A. Lockett III
                                             Georgia Bar No. 455549
                                             1397 Carroll Drive
                                             Atlanta, Georgia 30318
                                             (404) 259-3962
                                             john@lockettlawfirm.com

## IN THE SUPERIOR COURT OF FAYETTE COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| JERMAINE BRADLEY, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. 2022V-0107 |
| | ) | |
| v. | ) | |
| | ) | |
| MATTHEW WRIGHT, CFO of FIRST | ) | |
| COMMUNITY BANK, DARYL N. | ) | |
| BIBLE, CFO OF TRUIST BANK, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of February, 2022, I filed a true and correct copy of

**NOTICE OF APPEARANCE OF JOHN A. LOCKETT III** with the Clerk of the Fayette

Superior Court via PeachCourt and have served same by first-class U.S. Mail, proper postage

prepaid, properly addressed to the following:

Mr. Jermaine Bradley
150 Campbellton St
Fairburn GA 30213

**THE LOCKETT LAW FIRM**

*/s/John A. Lockett*
John A. Lockett III
Georgia Bar No. 455549
1397 Carroll Drive
Atlanta, Georgia 30318
(404) 259-3962
john@lockettlawfirm.com